HORTON, Respondent, v. TERMINAL HOTEL AND ARCADE COMPANY, Appellant.

St. Louis Court of Appeals, October 17, 1905.

1. INNKEEPER: Safe: Liability for Loss of Jewelry. A hotel company, which ran a lodging-house and kept an iron safe and posted notices thereof as required by section 7578, Revised Statutes of 1899, was not liable as an innkeeper for the loss of an article contemplated by said section, where the guest, owner of the article, handed a box containing the article to the hotel clerk and requested the latter to keep it for him, but did not request him to put it in the safe nor give any information concerning the contents of the box.

2. ———: Bailment. In such case, the hotel company was a gratuitous bailee and liable only for gross negligence in the care of the property.

3. ———: ———: **Pleading.** In an action for the loss of an article in such case, where the complainant alleged the delivery of the property to the defendant, the hotel company, and the failure of the company to return it, it sufficiently stated a cause of action against the latter as bailee.

4. ———: ———: **Degree of Care.** The hotel company was bound in such case to use only the slightest degree of care and was not liable if it took such care of the property as the most inattentive and thoughtless person would take of his own property.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher,* Judge.

REVERSED AND REMANDED.

*Andrew M. Sullivan* for appellant.

(1)   The appellant's business being that of letting or furnishing rooms only to lodgers, and not extending to the furnishing or offering to furnish to any one food or victuals, it was not engaged in conducting a hotel business nor was the house an inn or hotel; nor was the appellant a "guest," but a mere lodger. Not being an innkeeper, appellant was not liable as such or as an insurer, as charged in the petition. (a) "The first requisite of this extraordinary liability is that the alleged relation of innkeeper and guest should have existed between the parties at the time the loss occurred and such liability cannot be imposed in any case where the relation never in fact existed." Bunn v. Johnson, 77 Mo. App. 596. (b) "To constitute an inn there must be some provision for the essential needs of a traveler on his journey, viz.: lodging as well as food. These two elements of an inn may doubtless be present in very disproportionate degrees, as the needs of the situation may require; but both must in some degree be present to constitute an inn. 16 Am. & Eng. Ency. of Law (2 Ed.), p. 508; Lewis v. Hitchcock, 10 Fed. Rep. 4; Kelly v. New York Excise Com., 54 How. Prac. 327; Bullock v. Adair,

63 Ill. App. 30; Dickerson v. Rogers, 23 Tenn. 179; Bernstein v. Sweeney, 33 N. Y. Super. Ct. 271; Cromwell v. Stevens, 2 Daly (N. Y.) 15; Krohn v. Sweeney, 2 Daly (N. Y.) 200.   (2)   A hotel or inn is defined by the law and other dictionaries to be a public house where both food and lodging is supplied or provided for the guest. See Webster, Worcester, Century, and the various law dictionaries.   Sheffer v. Willoughby, 61 Ill. App. 263, affirmed, 163 Ill. 578; People v. Jones, 54 Barb. (N. Y.) 311; Blumm v. Palace Car Co., 1 Flipp. (U. S.) 500. (3)   The taking out of a hotel license and naming and advertising the house as a hotel, will not constitute it a hotel in fact, unless the elements required of furnishing food and lodging for travelers are both present; nor will the absence of these things prevent the house from being a hotel if the other required characteristics of a hotel are present.   Norcross v. Norcross, 53 Me. 163; Overseers of Poor v. Warner, 3 Hill (N. Y.) 150.

*Nagel & Kirby* and *Allen C. Orrick* for respondent.

An innkeeper has been defined to be one "who made it his business to entertain travelers or passengers and provide lodging and necessaries for them, their horses and attendants."   St. Louis v. Siegrist, 46 Mo. 594. When the horse ceased to be the ordinary means of transportation, stables ceased to be necessary adjuncts to inns.   Commonwealth v. Wetherbee, 101 Mass. 214.   So, too, when the increase in the density of population made it possible to sleep at an inn and procure food elsewhere, and separate charges came to to be made for lodging and food, the keeper of the inn or so-called European hotel was still held to absolute liability for the property of guests who lodged but did not eat at the inn.   Bullock v. Adair, 63 Ill. App. 30; Bernstein v. Sweeney, 33 N. Y. Sup. Ct. 271.

GOODE, J.—Plaintiff while a guest at the Terminal hotel in St. Louis, lost a gold-filled locket containing an ivory miniature, both alleged to be of the value of $221. The defendant company was conducting the hotel at the time and this action was instituted to recover the value of the lost property. It appears that lodging is furnished to the traveling public at the Terminal hotel, but not food. There is a restaurant contiguous, but not operated by the defendant. The hotel company itself furnishes nothing more in the way of entertainment than lodging. It advertises its house as a hotel, receives as transient guests all who apply for lodging, and is conducted under a hotel license. Because food is not furnished defendant contends it is not an innkeeper, nor subject to the onerous responsibilities of an innkeeper for the loss of property belonging to guests. A great deal of learning can be found in the books, and some nice distinctions, regarding the facts requisite to constitute a person an innkeeper in the technical sense. Anciently it was the law that an innkeeper was one who held himself out as ready to receive all travelers and entertain them with both lodging and food and, perhaps feed and stable their horses; or, as the old expression ran, provide entertainment "for man and beast." Changes in the modes of travel and the custom of furnishing food and lodging separately, have relaxed the definition of an innkeeper. [Commonwealth v. Weatherbee, 101 Mass. 214.] It might be held that a hotel where any traveler is given lodging is an inn nowadays, even though the guests take their meals elsewhere. But we see no reason why we should go into and decide this question in the present controversy; for, conceding that the defendant conducted an inn in the technical sense, the proof is that an iron safe, suitable for the safe-keeping of money and jewelry, was kept in the hotel and that notices of the fact were posted, as required by the statutes. Plaintiff himself thus testified, as did defendant's employees. Now, the statutes provide that, in such circumstances,

no innkeeper in this State shall be liable for the loss of money or jewelry or gold and silver articles belonging to a guest, unless the guest offered to deliver the property to the innkeeper for deposit in the safe and the innkeeper refused to receive or deposit it. [R. S. 1899, sec. 7578.] Plaintiff never offered the lost articles for deposit in the safe of the Terminal Hotel Company. Before going into the adjacent restaurant to get his supper, he handed a box containing the locket to the clerk and requested him to keep it for him, but gave the clerk no information concerning the contents of the box. In truth, the plaintiff admits he intended to get the locket after supper and keep it in his room during the night; but says he forgot to call for it and never thought of it again until midnight and after he had retired. When he remembered leaving it with the clerk, he rang for a bell-boy and sent him to get the locket, at the same time showing the boy another locket like it. This was the first time any employee about the hotel knew what was in the box the plaintiff had left with the clerk. When the bell-boy asked for the locket, the clerk with whom it had been left had gone off watch and the night clerk who had come on, could not find it. About three o'clock at night this clerk did find it and, after opening the box and seeing the locket inside, entrusted it to the bell-boy to take to plaintiff's room. The boy laid the box on a balustrade in the hotel until he filled an order for liquor which some guest had given, and when he returned it was gone. The clerk with whom the box was left had laid it on a desk in the office, under some papers, where the night clerk found it. These are the undisputed facts. Now, it is plain that when plaintiff handed the box containing the locket to the hotel clerk to keep until supper was over, not apprising him of its contents, the hotel company became, at most, a gratuitous bailee or depositary and was liable only for gross negligence in the care of the property. It assumed no liability as an innkeeper, for the reason that the article was one which,

under the statute we have cited, it was plaintiff's duty to entrust to the defendant to be deposited in the hotel safe. The defendant was responsible only as bailee, and we think the complaint was sufficient to charge it in that capacity. It alleged the delivery of the property to the defendant and the hotel company's failure to return it. Proof of those facts cast the burden on the defendant to excuse itself for not delivering the property. [Standard Milling Co. v. Transit Co., 122 Mo. 258, 26 S. W. 704; Kincheloe v. Priest, 89 Mo. 240, 1 S. W. 235.] But the defendant requested a declaration of law on this branch of the case which the court erroneously refused. An issue of fact arose regarding the care defendant had observed in caring for the property—an issue to be found by the judge as trier of the facts. The declaration was, in effect, that the defendant was a depositary of the locket and was bound only to take such care of it as the most inattentive and thoughtless person would take of his own property, and if the court believed from the evidence that the defendant used that degree of care, but, nevertheless, the property was lost, a verdict should be returned in defendant's favor. In a similar case the Supreme Court declared the law in accordance with that declaration; holding it was erroneous to give an instruction that a hotel proprietor, liable only as a gratuitous bailee, was responsible for gross negligence, without defining the meaning of that phrase, and that it meant the omission to use the degree of care which even the most inattentive and thoughtless never failed to take of their own concerns. [Wiser v. Chesley, 53 Mo. 547.]

The judgment is reversed and the cause remanded. All concur.